Good morning, Your Honors. May it please the Court, Anthony Eaglin on behalf of Milo Cushon Perkins has been denied due process of law in the District Court of Law. Your Honor, this is an appeal from a conviction and sentence by the District Court and our position as laid out in our brief is that Mr. Perkins was denied due process of law. He was denied due process of law at the pretrial stage and at the trial stage. The District Court denied Mr. Perkins the relevant information he needed in order to prepare his defense and at the trial level Mr. Perkins proceeded with that which he had and the court precluded relevant evidence which went directly to the heart of Mr. Perkins' defense. What do we do with the fact that despite opportunities to designate the portions of the audio tape that trial counsel wanted to hear, that didn't happen, that the lawyer never took the court up on? That did not, Your Honor, happen because it was our position that the entire tape was irrelevant. Were you trial counsel? I was trial counsel, Your Honor. So why didn't you do that? I mean, it seems to me that's a reasonable trial management tool for the judge to say, well, tell us what portions of the tape you want to play, show them to the other side, if there's a dispute I'll resolve it and we'll proceed that way and nothing happened. Your Honor, that matter had been brought to the attention of the court pretrial, we had submitted to the court a declaration where we outlined our theory of defense to the judge in no uncertain terms. But the problem you've got is an evidentiary problem, is it not? Portions of that tape are inadmissible hearsay unless you've got a participant in the conversation who is testifying as to what happened during that time period, and apparently the government and the court made the confidential informant available to you as a witness, but you didn't call her. Your Honor, the entire part of the tape that was hearsay was testimony that could have been from the defendant. The entire testimony of the defendant had been accepted from that CD, that tape, and was played in court, admitted into evidence. Therefore, it would not be hearsay in the sense that that portion of the tape had already been admitted into evidence. If he's on the stand testifying to it, then why do you need the tape? Your Honor, we very well could have pointed to certain things within the tape that we thought were instrumental in our defense. But it seems to me what you're trying to do through the witness is to introduce hearsay statements that were made by the informant without calling her to the witness stand, and you're trying to do that by playing the entire tape. That doesn't resolve the evidentiary problem, does it? Not so, Your Honor. We were not interested in the testimony, any of the testimony persons that was on the tape. There were specific instances on the tape that the defense was interested in. What you wanted to get in was what happened at McDonald's, right? And your client wasn't in the car when she got the hamburger at McDonald's. That, at McDonald's, and in addition, a few other things. So how do we get around the hearsay problem, counsel, without calling the witness? Well, Your Honor. But you weren't, were you interested in what she said at McDonald's? I was not interested. You were interested in showing the transaction. That is correct, Your Honor. Why is that hearsay? Your Honor, I would position that it would not be hearsay. That would be. Did you argue that to the court? Your Honor, I did not argue that to the court. I argued the relevancy of the particular item. It was the essence of the drug transaction, that it was a product of the government. There were certain things on there that was of interest to the defense. We outlined that in a declaration that we submitted to the court. We submitted to the court that there were portions of the tape that were, the sounds on the tape, where the defendant was scratching and frantically digging. Talk about McDonald's. You got me confused, counsel. What, Your Honor? You got me confused. I thought we were talking about McDonald's when the defendant wasn't in the car. Your Honor, the confidential informant was outfitted with a wiring device. No, I understand that. But you didn't call her even though she was available to you. And what I heard you saying in response to our questions was you wanted to get in the fact that she had what the government says is a hamburger purchase at McDonald's. What you say is the actual delivery of drugs. And so you wanted to play the tape for that reason, right? Your Honor, I wanted to play the tape for a number of reasons.  That was one of the reasons, Your Honor. Okay, so how do you get that portion of the tape into evidence without violating the hearsay rule if you're not going to call the informant and say, didn't you get the drugs from the hamburger deliverer at McDonald's? Your Honor, it's our position that what occurred at the McDonald's restaurant is not hearsay on the part of the defendant. I was not introducing the tape for what, anything that was said by any individual at the McDonald's restaurant. Because at the McDonald's restaurant, the defendant had not come into the picture at all. The confidential informant, prior to meeting with Mr. Perkins, made an unmonitored stop at the McDonald's restaurant where Mr. Perkins was not inside of the car. No law enforcement was inside of the car. Did you have one of the surveillance agents testify at the trial? One of the surveillance agents testified at the trial, Your Honor, and they testified that they were not present inside of the vehicle when the vehicle stopped at the McDonald's restaurant. So all they could testify to was we watched the car go through the drive-through, we watched the person at McDonald's hand them the paper bag, and then the informant drove off to meet with your client. That is correct, Your Honor. And that was before the jury. That was before the jury. So what more did you want to introduce that would otherwise not be hearsay? Your Honor, there were a number of other things within the tape that was of interest to the defendant. As I indicated, there was a video camera which captured. I thought it showed the steering wheel the entire time. I mean, I've looked at the tape. It doesn't show a darn thing. But there's a lot of noise. Isn't that what you're getting at? There was a lot of noise. Noise and activity. There was a lot of noise.  Well, you can interpret it was secreting money. But, I mean, how do we know what she was really doing? Well, Your Honor, we wanted to cross-examine the witness as well as viewing the exhibit. Why didn't you just call her? I don't understand why you didn't put her on the stand and treat her as a hospital witness. Your Honor, we made every attempt to introduce into evidence defense exhibit 104. No, I understand you wanted the tape. I just want to know why you had the witness available and you didn't call her. Why didn't you do that? It was a decision that was made with myself and my counsel. We have made every attempt to get evidence to support our theory of defense. I mean, were you just afraid of what she might say? But you had the tape to impeach her. So I'm not sure I understand the tactical decision here. I did not have the tape, Your Honor. I moved to introduce the tape into evidence. The court denied. But you could put her on the witness stand and then ask her a series of questions. And if she testifies in a way that you say is inconsistent with what the tape shows, then you may have laid the proper foundation for impeachment so that the court would allow you to play that portion of the tape in front of the jury to show that the witness is lying. Isn't that the way they do it? That is one of the ways that it can be done. The government and I stipulated that the tape in question was the tape of what actually occurred during the drug deal. With that stipulation, Your Honor, we felt that we met the adequate foundational requirement for its admission into evidence. The court felt not, and we think that's where the court erred. As I read the transcript, the government didn't agree with that either. I mean, they basically raised the hearsay objection. Your Honor, the government stipulated that the tape was, in fact, the tape that occurred on the date of the transaction. The government, however, objected to its introduction based upon relevance. But there's a way to do that, and it's the way that I just outlined. And I don't understand why you can't do this by the rules. Your Honor, I could have chose to do it that way. I chose not to. But you're claiming a due process violation, and I'm trying to understand how the court engaged in a due process violation when you didn't follow the rules of evidence that would have allowed you to do what you say you wanted to do. Your Honor, I think by stipulating that the item in question was the tape of what had transpired that particular evening, we had laid a sufficient foundation for its introduction. Okay. Your Honor, you know, on that particular tape, we felt that it went actually to the heart of the case. That was during the course of the trial. We also allege that pretrial the court precluded us from obtaining certain evidence that the government withheld. In particular, the evidence that we sought that the court precluded us from obtaining was the unredacted lab reports. There were lab reports produced whereby the technician determined that the packaging container of drugs associated with Mr. Perkins had no latent prints of value attributable to Mr. Perkins. And you got that in front of the jury, right? Well, Your Honor, we did. That his prints were not found on the plastic baggie. Exactly, Your Honor. We wanted more. The lab reports basically had reports from other packages that had been sent to the lab where prints of value had been taken from the packaging. But those portions of the lab report were redacted. We asked the court for unredacted copy of the lab report so that we could see what type of packaging was involved. If packaging of the same type that was associated with the package with Mr. Perkins, you know, it would support our theory that Mr. Perkins was not involved in the drug transaction. We also asked for the rough notes of the confidential, you know, informant. You know, initially the government indicated that they would provide that to us, but, you know, on the day of trial they advised us. Did the district judge review those notes in camera and rule that there was nothing inconsistent between the notes and the DEA-6s that you were provided? Your Honor, there were some notes provided to the court in camera. I'm not sure what was that. Isn't that what the court ruled? That's what I read in the transcript. The court was provided with some notes. We had made a discovery request. Didn't the court say I looked at the notes and they're not inconsistent with what the report said? She did, in fact, say that, Your Honor. Isn't that a ruling on your claim that they contain impeachment material? That is a ruling from the court. So do we not trust the district court to make that determination? Is that the due process violation? It is my position, Your Honor, that it was error for the court to deny us the agent rough notes of the confidential, you know, informant. Our theory of the defense was that there was no drug transaction and that the confidential informant basically was not involved. Basically fabricated this deal and for some, whatever happened at the McDonald's or whether the confidential informant, you know, had drugs inside of a vehicle. We think we asked the court for that information. There could have been some discussion between the case agent and the confidential informant about what was occurring inside of the car. There could have been a number of things that the defense could have used in the preparation of its defense. We felt it was error for the judge not to give us those notes. We had also asked for confidential informant information, such as, you know, the name of the cases that she had worked on, the amount of money that she had received in certain cases. I thought they told you the amount of money that had been paid to her in total, $26,000. They gave us a total figure. And she got $550 for this case. I had asked for more information. I had asked for detailed information. That was our position. But I guess what more would you need for impeachment of bias on amount for financial motive if you had all that? I wanted instances in which the confidential informant had been paid in other different cases. I wanted to know if that was... But you know how much she was paid in total. What difference does it make that she worked on 10 cases or 100? She's a paid informant. That's the value of the impeachment evidence. There may have been cases similar to the defendant, so that basically we can draw some comparison, so that we can make an informed decision as to whether or not to call the confidential informant. Because of the denial of the material that we felt we needed in order to prepare for defense, coupled with the denial of information we thought that went directly to the heart, you know, of those defenses. Why couldn't you put the informant on the witness stand and just ask her directly? Your Honor, I could have done that and come... As the court knows, a trial is a very fluid thing, and you never know how things are going to turn out. The court has denied us at every stage of our requesting certain things. If the court would have denied us on some hearsay ground or whatever ground the court thought would have been appropriate and precluded us from introducing any evidence whatsoever, we would have a confidential informant up there reiterating what it was that she told, you know, the agents before, that she had bought drugs from Mr. Perkins. It was a decision that was made by myself and my client not to call the witness, and we feel that the rulings that were made by the court were made in error, and those error impinged upon Mr. Perkins' decision not to call that witness and effectively impinged upon his constitutional rights. We have your argument well in hand. Your Honor, one other matter should this court decide not to send this matter back to the district court. We raised an issue with respect to the sentencing matter in this particular court. The government filed an 851, you know, information, and it's our position that the document that the government filed provides inadequate notice to the defendant that it is their intention to seek an enhanced sentence. We've got all the information. We know all about that. May it please the Court, Robin Bacon on behalf of the United States. As a preliminary matter, Your Honors, and with the full apologies from myself and my office, there was a last-minute filing related to an issue that came up in preparation for this hearing to file a government supplemental excerpts of record under seal and in camera. This is the same material that was filed with the district court, namely the case agent surveillance notes. I think we've all voted on that. We're going to get an order out today granting your motion. I was just going to let you know that I brought copies of the material because I believe otherwise they have to come here from San Francisco. So if you would be interested. We did file them in San Francisco, but after consulting with the clerk for your convenience, I brought copies. Why don't you give them to the clerk when we take our recess? Absolutely. What did you say? You can give them to the clerk. Give them over here. We'll look at them. I'll take care of that as soon as we're done. With respect to what happened at trial, I'd just like to clarify the record on a few matters. The first of which is that actually a recording of what transpired at McDonald's was played for the jury. It was government's exhibit number four. It was introduced as part of the government's rebuttal case without any objection from the defense. The jury heard the confidential informant order a Big Mac and a 99-cent sweet tea. And they also were able to, as I invited them to do in closing, decide for themselves which of the two recordings, that transaction or her encounter with the defendant, in which he asked four times if she was law enforcement, confirmed with her that she wanted two, asked if he'd given her the right thing, and handed her something in a plastic bag. Was that portion played for the jury? This was all played for the jury. Okay, what about, I've watched the videotape as well. What about the beginning of that tape? What was she doing? It goes on for quite a bit of time where she's like zippering and unzippering bags and putting things in places. I mean, we don't know, I just don't know what she was doing. The defendant says that what she was doing was secreting money in various envelopes and other nefarious things. I don't know what they were. But what was she doing? I can't say for certain what she was doing, Your Honor. I've also reviewed the video, and it's a little bit hard to tell. I know, and this is actually something that came up at trial, that the recording device that she was given was handed to her. She was searched before she was put in her car. Her car was searched before she got into the car, before going to meet with the defendant. But that the recording device was disguised in order to prevent the defendant from noticing that there was a camera. And it's not uncommon to disguise recording devices, for example, with a female informant as a purse or something of that nature. It sounds like she's arranging her belongings. And given that her purse and her person and the car had all been searched before that happened, I don't know exactly what she was doing. It could be that she was putting money away, because it was $1,600 in cash. And I know I'm not comfortable driving around with that kind of money, just sitting on the passenger seat. It could have been something like she was looking for her phone. I just don't know. Aren't you vouching now? I'm not, Your Honor. I'm only saying that we don't know what was transpiring at that point. And had the defendant actually ---- In my past experiences, there's always something that gets fouled up with these recording devices. Absolutely, Your Honor. Yeah, all the time you'd think they'd figure out how to do it correctly. And this was not a case ---- and that's actually something that happened in this case. It was not the intention of the government to present the jury with a video of a steering column. It was certainly the idea was to get the actual transaction on video. The jury had that information. I mean, the question here is really whether or not the defendant received a fair trial, whether or not Judge Wynn abused her discretion in deciding that rather than subjecting the jury to 40 minutes of a steering column. That's another question. It's only 40 minutes of a tape. I don't see that her transaction at McDonald's was being offered for the truth of her transaction at McDonald's. So I don't see that that's hearsay. And, I mean, I don't know how relevant it all was, but it's only 40 minutes. Why was that considered so burdensome to show to the jury? Well, I think the relevance issue is an important one. Given that it was the government's position that the jury had heard the relevant portions of the tape and that there were long minutes of nothing but a steering column and background music, the judge made a decision that that was not the best and most effective way of presenting the jury with evidence and that, to some extent, taking into consideration both Rule 401 and Rule 403, that the risk of, say, boring the jury to distraction was such that it wasn't unreasonable for her to ask the defense, if there's something on this tape, please identify it and we can say that. Isn't there a rule of completeness? If you put in some portions, you need to put in all? I'm not familiar with any case that says that the rule of completeness requires playing an entire recording so long as the excerpts themselves are not misleading. And that was certainly the government's position here. It was for completeness purposes that the substance of the transaction was introduced. So, for example, we did not only play one line from defendant with no context that might make it sound like he had been plotting something even more nefarious than selling drugs. But the rule of completeness certainly doesn't obligate or even permit either party to introduce distracting or irrelevant evidence for the sole purpose of saying now you've heard everything that happened in the car. The fact is that the recording reflects the amount of time it took for the informant to drive from the meeting location to meet with defendant and then back to the meeting location. The defendant did have a full recording? He was provided with it, yes. What does that mean? It means that he had a copy of it. Did he have a copy of it? Yes, he did, sir. He still has it? I believe he does. I know he at least submitted one with the court as part of his appeal. But he was also produced one in discovery. And that's also, if you look at the record, you see that the surveillance team testified. And they testified about what they heard and what they monitored and were cross-examined about it. And, in fact, one of the agents, Agent Malazzo, defense actually played portions of the recording to refresh her recollection about events that took place and presented to the jury that the informant received phone calls that law enforcement had not planned for her to receive and didn't know who she was speaking to. So to the extent that there was additional information in the recording that was relevant for the jury, there were ways to bring that in. As far as going to the heart of the defense, every substantive subject related to that defense was presented to the jury. They did learn that the informant was paid. They did learn that the informant had the free use of her phone. They knew that she had stopped at McDonald's. They had the tools that they needed to make a decision. And the judge's decision not to allow him to admit the entire recording was not an abuse of discretion and certainly didn't deprive him of his right to a fair trial. Ultimately, had it actually been an issue, the defense also had the option of calling the informant to the stand. And the district court made it very clear before trial that he was entitled to, I believe the phrase was, fully and vigorously examine the informant using the recording in the event that she made any testimonial statements that contradicted the video. And that was also why the government made the witness available to testify at trial. The defense is allowed to make the strategic choice not to call her, if nothing else. She was the only person, other than the agents, who could have identified the defendant as somebody who had dealt her drugs. And there were other incidents that took place in the car that the defense may well have chosen not to bring to the attention of the jury. All of that could weigh into the decision not to call the informant. But that strategic choice is not a denial of his due process rights. Due process just wants to make sure that he had that choice. And the defense had all the materials he needed to do that. So let's talk about the Section 851 statement. Yes, ma'am. That does not say anywhere that the government intends to use the prior conviction to ask for an enhanced sentence. No, it does not. However, given that Section 851, by its very nature, exists for the sole purpose of relating to the provisions in Section 841 that relate to enhancement of sentence, and this Court's decision in Hamilton, which basically sets forth the requirements for adequate 851 notice, it was the government's position that an information that indicated it was filed under Section 851 and included the name, the court, the jurisdiction, the charge, the date, and the location of the prior conviction was sufficient notice that the government intended under 841 to seek an enhanced maximum sentence. That document just put that sentence in. I suppose, Your Honor, until defense pointed to this one case, which is Sparrow, which if you read the case and the facts of the case, it's very unusual and certainly not comparable to the situation here. It honestly never occurred to me it was necessary. Why the government didn't put it in? Sir, because until then, it did not occur to me that it was necessary to do so. What? It had not occurred to me that it was necessary to do so. Because there's no reason to file an information under 851 except to enhance a sentence under 841. Well, so, and you're saying just citing to 841 any notice is sufficient? The government, my position, Your Honor, is that filing an 851 information can serve only one purpose, which is to notify the defense that there is a prior felony drug conviction that the government intends to use to seek a higher mandatory minimum penalty. Okay. So what Judge Preyerson is asking you, and I'm assuming this is the AUSA's standard form, right? Yes, it is. Okay. Why don't you make your standard form a little more clear? I don't believe that until now there was any thought it was necessary, Your Honor. But after this, I'm happy to raise the issue within the office. Because Hamilton doesn't go, doesn't protect you entirely. It's kind of a, it's an interesting line. It's one line where they say, as long as the information provides clear notice to the defendant of the prior convictions and the court gives an opportunity to attack convictions less than five years old, then the statute has been satisfied. But it doesn't say specifically what should be in the sentence. It does not say specifically what should be in the information, Your Honor. But it's my understanding that there is simply no other reason to file an 851 information. Well, the statute is pretty, I mean, the first line of the statute says, no person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions unless before trial the United States attorney files an information with the court. I mean, all I have to do is read the statute that the notice refers to. It appears, I agree, Your Honor, that really the 851, there's just, it's not a stand-alone charging document, so it's not accusing you. I think it's probably maybe technically sufficient, but I think your office could do a better standard form. Yes, ma'am. I mean, I'm just learning about this for the first time. So you make a lot of assumptions. And I do not intend to make any assumptions, Your Honor. Well, you shouldn't have made them in the first place because it's important and you need to send, if you're going to send something out, maybe the message ought to be clear. I try to make my messages clear. And I certainly try to do the same, Your Honor, and under the circumstances, it just did not occur to me that there could be any other reason for me to file an 851 information. Maybe this one might lead me to believe, because one of the purposes of this is to decide whether to enter a guilty plea or proceed to trial, right? Yes, Your Honor. Okay, so on this one, I might think, well, yeah, they're aware of this prior conviction, but they might not assert it. That's true, but then that would have to go into the risk calculation. At the point at which I filed the 851 information, I certainly intend to communicate to defense counsel that that is the risk of conviction, is that at that point the government will then come in to prove up this conviction to obtain the higher mandatory minimum sentence. Well, it doesn't say you're going to. It certainly says that I could, and even indictments are not a guarantee of what we're going to do. It's a notice document. It's intended to allow the defense to understand what it is that the government intends to do, what it is that the government is capable of doing, or we believe ourselves to have evidence to support. And so in this situation, it's notifying the defense that we have evidence that you committed a prior felony drug offense, and that information can be used to seek a higher penalty. But to say that it's inadequate notice because it doesn't make it explicitly clear that in the event that you're convicted, I am going to seek a higher penalty would in some ways seem to require, it would elevate the requirements of the document beyond what the statute requires. You see, in today's world, you get drowned by paper every day. It comes fluttering down like the snow. And a lot of the stuff I don't look at because I have to spend my whole life just looking at those papers, and attorneys are busy, and it's, you know, you have to think that you're trying to get a message across, and it needs to be clear. All you have to do is say, well, did you send this to the probation office too? The A51 information? Yeah. They were provided with a copy of it as well as the documents in support of the conviction after. You send it to them because you wanted them to take that conviction into consideration when they prepared their probation report and went through all the mathematical machinations that they go through Instead of thinking about probation and how they can help someone now, they're all mathematicians, you know, they work computers and all that. I'm just maybe exaggerating. But you made it easier on them because they knew what it was. And you send them everything so you could get it in there. Every piece of paper that was sent to probation was also provided to the defense before trial, and based on the record is my position that the A51 information was sufficient, but I would just add for the court that I did speak to defense counsel before trial, and this was one of the things we discussed, and I think it even comes up on the record at one of the pretrial hearings, certainly at sentencing. So it's true that there's no sentence in the information, but he had the document. He had certified copies of the conviction records, which combined with the document itself And you called and told him that this information would be part of the computation that the probation officer would use in computing the guideline sentence? I don't recall if I called him or he called me, but I did in fact speak to defense counsel on the phone shortly after filing the A51 information. I also sent him a plea agreement. Oh, you talked to him? I did speak to him, yes. Because you didn't talk to him about this information. I spoke to him about this information, and I also provided the defense with a plea agreement, which they didn't accept, but which included among its terms that the government would not be going forward with the A51 in exchange for a plea, and built into that was language covering the fact that in light of the A51 information, his mandatory minimum penalty was increased. So there were certainly communications. My papers as filed here were based on what's in the record, and that's based on just the four corners of the A51 information. But as far as communications are concerned, there were extensive communications before trial between counsel about whether or not it would be possible to resolve it and to make sure that defense counsel had full information when discussing this with his client. So it's my position that the four corners of the document do provide enough information for him to be able to challenge it in the event that he was convicted and we went forward to sentencing. But it's also my position that there was sufficient notice here. This isn't something that we snuck up on and were filed under cover of darkness. This wasn't filed under seal. He had all the information and a codebook, certainly would have been able to determine that the government was going to at least was considering seeking a higher penalty. And that's not to say that things couldn't have changed, just like sometimes they change with indictments. It's just to say that by filing it, I'm saying this is now in play. And you should be prepared in the event that you have a defense to it. I have to say I'm actually surprised that the defense even raised this issue. These notices have been around for 43 years. And every experienced narcotics prosecutor and defense lawyer knows that when an 851 notice is filed, it means that your client is facing the risk of an enhanced punishment if he gets convicted on the charge you're going to trial on. I just don't see what the notice issue is here. I'm inclined to agree, but I'm also open to answering additional questions. If I mean, I think that I think it's a fair, fair suggestion that the form could be made a little clearer, but I just can't believe that any competent lawyer wouldn't know. Well, what about the other kind? Read the code. So if there are no further questions, then the government will submit on its papers. Thank you very much.
judges: Pregerson, Wardlaw, Tallman